IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA SANDOE<br>501 East Washington Street<br>Lisbon, OH 44432<br>   Plaintiff, | )<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| ALEXANDER SAMMI, LLC.,<br>d.b.a. VALLEY VIEW II<br>c/o Issac Ashraf<br>Statutory Agent<br>257 Country Club Dr SE<br>Warren, Ohio 44484<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Pamela Sandoe, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## PARTIES AND VENUE

1. Sandoe is a resident of the City of Lisbon, County of Columbiana, State of Ohio.

2. Alexander Sammi LLC.,. ("Sammi") is a corporation, licensed and registered to do business in Ohio, that operated a business located at 514 N Market St Lisbon, Ohio 44432

## PERSONAL JURISDICTION

3. Defendant hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Defendant comports with due process.

4. Sandoe performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

5. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), 26 U.S.C. § 7434, and 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Sandoe' rights under the FLSA.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Sandoe' state law claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Ohio Constitution, and public policy claims. because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

9. At all times referenced herein, Defendant formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

10. During all times material to this Complaint, Defendant was Sandoe's "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

11. At all times material to the Complaint, Sandoe directly participated in the actual movement of things in interstate commerce by processing orders for interstate shipments, and processing payments from interstate clients, for Defendants, located in Ohio.

12. At all material times, Defendants were employers within the meaning of the FLSA and the OMFWSA.

## FACTS

13. Defendant owns and operates gas stations and convenience stores.

14. Sandoe is a former employee of Defendant.

15. Defendants hired Sandoe as a Cashier in or around August 2020.

16. Defendants hired Sandoe at a regular rate of $9.00 an hour.

17. As a Cashier, Sandoe's primary job duties included processing credit card transactions, stocking shelves, and assisting Defendant's customers.

18. During her employment, Defendant scheduled Sandoe to work between 40 and 50 hours a week.

19. At all times relevant herein, Defendant paid Sandoe a variable rate based on the hours she worked in a given week.

20. At all times relevant herein, Defendant treated Sandoe as an hourly employee.

21. At all times relevant herein, Sandoe was not employed as a salaried employee by Defendants.

22. Sandoe was non-exempt from the overtime requirements of the FLSA.

23. Defendants knew that as a cashier Sandoe was a non-exempt hourly employee.

24. Throughout Sandoe's employment with Defendant, Defendant would only compensate Sandoe at her regular rate for 80 hours in a given pay period regardless of how many hours Sandoe worked in the pay period.

25. Throughout Sandoe's employment with Defendant, Sandoe frequently worked over 80 hours in a given pay period.

26. Throughout Sandoe's employment with Defendant, Defendant failed to compensate Sandoe at all for hours she worked past 80 hours in a given pay period.

27. Defendant did not pay Sandoe the statutorily required overtime for hours she worked in excess of 80 in a given pay period.

28. Defendant violated the FLSA and OMFWSA by failing to pay Sandoe the statutorily required overtime for hours she worked in excess of 80 in a given pay period.

29. Despite being on notice of their obligations under the FLSA, Defendants knowingly and willfully violated the FLSA with respect to Sandoe.

30. Defendants' violation of the FLSA was committed without a good faith belief that the practices described herein were lawful.

31. On or around November 25, 2020, an Ohio Department of Transportation employee informed Sandoe that a live wire was sparking near Defendant's gas reservoir ("Hazardous Condition").

32. The Hazardous Condition constituted a fire risk.

33. The Hazardous Condition threatened the health and safety of Defendant's customers and employees.

34. The ODOT employee told Sandoe to report the Hazardous Condition to the local fire department.

35. Following the ODOT employee's direction, Sandoe reported the Hazardous Condition to the local fire department ("Report of Hazardous Conditions").

36. Sandoe made the Report of Hazardous Conditions in an attempt to remedy the Hazardous Condition.

37. Sandoe made the Report of Hazardous Conditions in an attempt to make Defendant's premises safe for Defendant's employees and customers.

38. After Sandoe's Report of Hazardous Conditions, Sandoe called Jamie, Last Name Unknown, her direct supervisor, and informed Jamie about the Hazardous Condition and Sandoe's Report of Hazardous Conditions ("Report to Defendant").

39. Following Sandoe's Report to Defendant, Issac Ashraf, Defendant's owner, called Sandoe and told her that Defendant was terminating her employment due to Sandoe's Report of Hazardous Conditions.

40. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

41. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

42. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

43. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

44. By allowing the Hazardous Condition to exist, Defendants failed to create a safe environment for its customers and employees.

45. Defendant's failure to ensure a safe work environment is a violation of R.C. § 4101.11.

46. Defendant's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

47. Defendant's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

48. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

49. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D. Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

50. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

51. The Tenth District Court of Appeals in *Blackburn*, further held that Ohio has a public policy prohibiting terminating the employment of individuals who make complaints regarding an unsafe work environment.

52. Defendant's termination of Sandoe, for Sandoe's Report of Hazardous Conditions, served to discourage other employees from reporting unsafe conditions for fear of termination.

53. By terminating Sandoe for Sandoe's Report of Hazardous Conditions, Defendant intended to discourage other employees from reporting unsafe conditions.

54. Defendant's termination of Sandoe for Sandoe's Report of Hazardous Conditions jeopardizes Ohio's public policy ensuring a safe working environment.

55. While terminating Sandoe, Ashraf admitted that the sole reason Defendant was terminating Sandoe was due to Sandoe's Report of Hazardous Conditions.

56. There was a causal connection between Sandoe's Report of Hazardous Conditions and Defendant's termination of Sandoe.

57. Defendant knowingly terminated Sandoe's employment.

58. Defendant knowingly took an adverse employment action against Sandoe.

59. Defendant knowingly took an adverse action against Sandoe.

60. Defendant intentionally terminated Sandoe's employment.

61. Defendant intentionally took an adverse employment action against Sandoe.

62. Defendant intentionally took an adverse action against Sandoe.

63. Defendant knew that terminating Sandoe would cause them harm, including economic harm.

64. Defendant willfully terminated Sandoe's employment.

65. Defendant willfully took an adverse employment action against Sandoe.

66. Defendant willfully took an adverse action against Sandoe.

67. Upon information and belief, Defendant's employees became aware that Sandoe made complaints regarding an unsafe working environment.

68. Upon information and belief, Defendant's employees became aware that Sandoe made complaints regarding an unsafe working environment.

69. Upon information and belief, Defendant's employee became aware that Sandoe were terminated within close proximity of their complaints regarding an unsafe working environment.

70. In terminating the employment of Sandoe for reporting an unsafe working environment, Defendant dissuaded its employees from making complaints of an unsafe working environment.

71. In dissuading its employees from making complaints of an unsafe working environment, Defendant jeopardized Ohio's public policy ensuring a safe working environment.

72. In dissuading its employees from making complaints of an unsafe working environment, Defendant jeopardized Ohio's public policy protecting individuals who make complaints regarding an unsafe working environment.

73. As a direct and proximate result of Defendant's unlawful conduct, Sandoe has suffered and will continue to suffer a loss of income and other damages.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT: FAILURE TO PAY OVERTIME

74. Sandoe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek.

76. Sandoe was not exempt from the right to receive overtime pay under the FLSA during her employment with Defendants.

77. Sandoe is entitled to be paid overtime compensation for all overtime hours worked.

78. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay overtime to its employees for her hours worked in excess of 40 hours per week.

79. Defendants failed to make, keep, and preserve accurate time records with respect to Sandoe and/or knowingly disregarded the time that reported to them by Sandoe regarding the hours they worked, in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

80. Defendants either recklessly failed to investigate whether their failure to pay Sandoe overtime violated the Federal Wage Laws of the United States, they intentionally misled Sandoe to believe that Defendants were not required to pay overtime, and/or Defendants concocted a scheme pursuant to which they deprived Sandoe the overtime pay they earned.

81. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82. Sandoe is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

83. Defendants violated the FLSA without a good faith belief that her conduct was lawful.

84. Sandoe requests recovery of her attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b)

**COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME**

85. Sandoe restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

86. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

87. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

88. Sandoe was an employee of Defendants as that term is defined by the OMFWSA.

89. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

90. Defendants failed to pay Sandoe overtime for hours she worked in excess of 40 per week.

91. In denying Sandoe overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

92. As a direct and proximate result of Defendant's unlawful conduct, Sandoe has suffered and will continue to suffer a loss of income and other damages.

93. Having violated the OMFWSA, Defendants are joint and severally liable to Sandoe pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees.

**COUNT III: VIOLATION OF THE OHIO PROMPT PAYMENT ACT, O.R.C. § 4113.51.**

94. Sandoe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

95. The Ohio Prompt Pay Act ("OPPA") required Defendants to pay Sandoe all wages, including unpaid overtime, on or before the first day of each month, for wages earned by Sandoe during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by Sandoe during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

96. Sandoe were not paid all wages due within 30 days of their performing the work that entitled her to overtime. *See* R.C. §4113.15(B).

97. Sandoe' s unpaid wages remain unpaid for more than 30 days beyond their regularly scheduled payday.

98. Sandoe have been harmed and continues to be harmed by Defendants' acts and/or omissions as described herein and is entitled to the greater of $200.00 or an additional six percent on the total amount of wages due. See O.R.C. § 4113.15(C).

**COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

99. Sandoe restate each and every prior paragraph of this Complaint as if it were fully restated herein.

100. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating a crime victim for contacting the police.

101. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee for participating in a criminal investigation.

102. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

103. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

104. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

105. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

106. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

107. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if they are terminated in retaliation for reporting to their employer that they are forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

108. The Ohio Supreme Court recognized a clear public policy exists and is manifested in stating: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

109. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

110. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D.

Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

111. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

112. The Tenth District Court of Appeals in *Blackburn* further held that Ohio has a public policy protecting employees who report unsafe working conditions.

113. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

114. In terminating Sandoe's employment as a result of her complaints regarding the Hazardous Condition, Defendant dissuaded employees from making complaints regarding workplace safety.

115. In dissuading employees from making complaints regarding workplace safety, Defendant jeopardized Ohio's public policy favoring workplace safety as established though *Pytlinski*, 94 Ohio St. 3d 77, at 80; *Lightner*, 2016 WL 6693548; *Blackburn*, 22 N.E.3d 1149; *Hucke*, 2008 WL 11352589 and R.C. §§ 4101.11 & 4101.12.

116. Defendant's continued failure to remedy the assault Ohio's public policy favoring workplace safety as established though *Pytlinski*, 94 Ohio St. 3d 77, at 80; *Lightner*, 2016 WL 6693548; *Blackburn*, 22 N.E.3d 1149; *Hucke*, 2008 WL 11352589 and R.C. §§ 4101.11 & 4101.12 violates these public policies.

117. In fostering an unsafe working environment, Defendant jeopardized Ohio's public policy ensuring a safe working environment for employees.

118. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

119. Defendants' termination of Sandoe jeopardizes these public policies.

120. Defendant's termination of Sandoe was motivated by conduct related to these public policies.

121. Defendant terminated Sandoe's employment in retaliation for making complaints regarding an unsafe working environment.

122. Defendant dissuaded its employees from making similar complaints to Sandoe in terminating Sandoe's employment.

123. Defendant jeopardized Ohio's public policy protecting employees who make reports of unsafe working conditions when it dissuaded its employees from making similar complaints to Sandoe in terminating Sandoe's employment.

124. Defendant had no overriding business justification for terminating Sandoe.

125. As a direct and proximate result of Defendant's conduct, Sandoe has suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Pamela Sandoe requests judgment in her favor against Defendants, joint and severally, and containing the following relief:

(a) Issue an order requiring Defendants to restore Sandoe to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Sandoe for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq*.

(e) Issuing a declaratory judgment that Defendants violated the recording-keeping requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a),

(f) Awarding Sandoe unpaid minimum wages and unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(g) Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Sandoe in an amount to be determined at trial;

(h) Issuing an injunction prohibiting Defendant from continued unlawful practices, policies and patterns set forth herein;

(i) Awarding pre-judgment and post-judgment interest as provided by law;

(j) Awarding reasonable attorneys' fees and costs; and

(k) Awarding such other and further relief that this Court deems appropriate.

        Respectfully submitted,

        */s/ Samuel B. Robb*
        Daniel S. Dubow (0095530)
        Samuel B. Robb (0099035)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: daniel.dubow@spitzlawfirm.com
                  sam.robb@spitzlawfirm.com

        *Attorneys for Plaintiff Pamela Sandoe*

## **JURY DEMAND**

Plaintiff Pamela Sandoe demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Samuel B. Robb*
>Samuel B. Robb (0099035)
>**THE SPITZ LAW FIRM, LLC**